John D. Lovi (john@blackstone-law.com)
Alexander J. Urbelis (alex@blackstone-law.com)
Justin B. Perri (justin@blackstone-law.com)
**BLACKSTONE LAW GROUP LLP**
1201 Broadway, 9th Floor
New York, New York 10001
Telephone/ Facsimile: (212) 779 3070

Mark R.W. Bellermann (mark@brakehughes.com)
Brake Hughes Bellermann LLP
1701 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 470 6453
Facsimile: (202) 470 6464

*Attorneys for Plaintiff
iSentium, LLC*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **iSENTIUM, LLC,**<br><br>                                    Plaintiff,<br><br>– against –<br><br>**BLOOMBERG FINANCE L.P., BLOOMBERG L.P., and BLOOMBERG INC.,**<br><br>                                    Defendants. | Civil Action No. _____<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>*DOCUMENT ELECTRONICALLY FILED* |

Plaintiff iSentium, LLC ("iSentium"), by its attorneys, Blackstone Law Group LLP and Brake Hughes Bellermann LLP, for its Complaint against Defendants Bloomberg Finance L.P., Bloomberg L.P., and Bloomberg Inc. (collectively, "Bloomberg" or "Defendants"), hereby alleges as follows:

## NATURE OF THE ACTION

1.  This suit is brought against Bloomberg for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., for infringement of one or more claims of U.S. Patent No. 8,856,056 (the "'056 patent" or "patent-in-suit"), as well as breach of contract, misappropriation of trade secrets, and other common law and statutory violations as a result of Bloomberg's actions in unlawfully misappropriating and using iSentium's sentiment analysis technology for its own commercial purposes and benefit.

## PARTIES

2.  iSentium, LLC is a Delaware limited liability company with its principal place of business located at 800 Brickell Avenue, Suite 602, Miami, Florida 33131.

3.  On information and belief, Bloomberg Finance L.P. is a Delaware limited partnership and a subsidiary of Bloomberg L.P. with a principal place of business located at 731 Lexington Avenue, New York, New York 10022.

4.  On information and belief, Bloomberg L.P. is a Delaware limited partnership, having a place of business located at 731 Lexington Avenue, New York, New York 10022 and operations throughout the world.

5.  On information and belief, Bloomberg Inc. is a Delaware corporation with its principal place of business located at 731 Lexington Avenue, New York, New York 10022.

## JURISDICTION AND VENUE

6.  This action arises under the laws of the United States, Title 35 of the United States Code.

7.      This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to 28 U.S.C. §§ 1331 and 1338(a), 18 U.S.C. § 1831, *et seq.*, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over causes of action for the misappropriation of trade secrets based on New York common law.

8.      This Court has personal jurisdiction over Bloomberg in that Bloomberg's substantial, continuous, and systematic contacts with the state of New York render Bloomberg essentially at home in the state of New York.  Bloomberg regularly conducts business, including selling services and products, within the state of New York and this judicial district, and directly or through intermediaries, distributes, offers for sale, sells, markets, promotes and/or advertises its products and services in the state of New York and this judicial district.

9.      Venue in this District is proper pursuant to 28 U.S.C. §§ 1391 and 1400 because, *inter alia*, Defendants' principal place of business is located in this judicial district and infringement of the patent-in-suit has occurred and is occurring in this judicial district.

## BACKGROUND FACTS

### iSentium is Granted the '056 Patent

10.      On September 12, 2012, U.S. Patent Application No. 15/272,678 was published as U.S. Patent Publication No. 2012/0246104 by three inventors from iSentium; this application would eventually lead to the '056 patent.

11.      On October 7, 2014, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '056 patent, entitled "Sentiment calculus for a method and system using social media for event-driven trading," based upon the application filed by the inventors, Anna Maria Di Sciullo, Alex Karakozoff, and Gautham Sastri, the Chairman and CEO of iSentium.  (Attached hereto as Exhibit A is a true and correct copy of the '056 patent.)

12. This patented technology is extremely valuable in that it allows for the delivery of highly predictive and real-time market sentiment data, derived from social media, to financial professionals, including traders, portfolio managers, and other market participants, that has hitherto been unavailable from any other source.

### iSentium and Bloomberg Enter into a Business Relationship

13. iSentium was formed to create applications for analyzing the user sentiment of massive amounts of individual social media content, and then transforming this unstructured data into actionable indicators for diverse fields such as finance, brand management, and politics.

14. Bloomberg is a privately held financial software, data, and media company that provides financial software tools through, among other things, the Bloomberg Terminal. The Bloomberg Terminal also enables users to access Bloomberg Professional services.

15. In or around early 2013, iSentium and Bloomberg commenced discussions about incorporating iSentium's sentiment analysis technology to power event-driven trading ("iSENSE") on the Bloomberg Terminal platform.

16. On or around May 2013, Bloomberg presented iSentium with a Mutual Non-Disclosure Agreement ("MNDA") that was drafted and prepared by Bloomberg. iSentium did not modify any terms of the proposed MNDA.

### The June 11, 2013 MNDA

17. On June 11, 2013, Alexander Karakozoff, then the Chief Operations Officer of iSentium, signed the MNDA that was presented to iSentium by Bloomberg. (Attached hereto as Exhibit B is a true and correct copy of the fully-executed MNDA.)

18. The definition of "Confidential Information" in the MNDA is very broad, and includes "specifications, designs, plans, drawings, hardware, software, data, customer lists or

other business and technical information…" and "any discussions, summaries, analyses, studies, compilations or other documents or memorializations of or relating to Confidential Information." *See* MNDA at ¶ B.

19. Both iSentium and Bloomberg understood the importance of entering into an MNDA to protect their respective confidential and proprietary business information. For example, the parties acknowledged that any "unauthorized loss, use or disclosure" of such confidential information would cause "irreparable injury." *See* MNDA at ¶ F.

20. The MNDA provided that upon termination, Bloomberg "shall return or destroy all Confidential Information." MNDA at ¶ C(7). The MNDA also provided that Bloomberg would not "disassemble, decompile, or reverse engineer" iSentium's Confidential Information without iSentium's prior written consent. MNDA at ¶ C(6).

21. The parties also acknowledged that these obligations concerning iSentium's confidential information "shall survive and continue after any expiration or termination of this NDA." *See* MNDA at ¶ E.

22. After executing the MNDA, iSentium provided Bloomberg with executable versions of iSENSE (*e.g.,* compiled source code), technical specifications of the application, user documentation, and proprietary data on which to run extensive and exhaustive tests of the efficacy of iSENSE to power event-driven trading.

23. The information provided to Bloomberg included iSentium's trade secrets relating to iSENSE and, in particular, its methodologies for processing social media content and transforming its analyses into real-time graphs that are easily comprehended by an end-user.

24. iSentium and Bloomberg also discussed at length the incorporation of iSENSE into Bloomberg terminals during more than a dozen meetings and conference calls and extensively through e-mail communications.

25. Bloomberg quickly began incorporating iSENSE, including the trade secrets it learned under the MNDA, into the Bloomberg Terminal platform. By or about February 20, 2014, Bloomberg announced, via press release, that it was providing social sentiment analytics:

> To answer that, Bloomberg also provides social sentiment analytics. Users can set up an alert to watch, for example, all of the tickers in the S&P 500 and be alerted to those with significantly positive or negative social sentiment. BSV monitors the flow of tweets about each stock and triggers an alert whenever sentiment crosses a particular threshold. From there, subscribers can see the overall volume of tweets and the mix of positive, negative and neutral comments, and can click their way to individual Twitter postings, which are available directly through the terminal.
>
> Sophisticated tools are used to measure a tweet's sentiment. The system relies on algorithms developed by a team of PhDs, product managers and R&D professionals incorporating statistical models and years of Twitter history applied to financial markets.

### **iSentium and Bloomberg Terminate their Relationship**

26. In or around February 2016, iSentium began revamping certain components of iSENSE, and, consequently, it was no longer feasible to maintain a version of its application that operated on the Microsoft .NET framework required of Bloomberg Terminal applications.

27. Around this same time, iSentium also requested that Bloomberg remove iSENSE from the Bloomberg Terminal.

28. On or about March 1, 2016, iSentium requested that the MNDA be terminated. Termination of the MNDA was confirmed by Bloomberg via e-mail on March 7, 2016, by Mr. Jay Lee, Bloomberg L.P.'s Global Content and Product Manager.

29. According to the terms of the MNDA, Bloomberg was obligated to return or destroy all of the confidential information it had received from iSentium. Despite this obligation,

Bloomberg did not return any confidential information to iSentium. On information and belief, Bloomberg also failed to destroy any of iSentium's confidential information as required.

30. Despite termination of the MNDA, Bloomberg continued to offer iSENSE through its terminals, even though the application was not being supported by iSentium and the data driving the sentiment analyses was not being updated.

31. Upon information and belief, this resulted in many complaints about the efficacy of iSENSE from users of the application.

32. Upon information and belief, while knowing that the application was not supported and not being updated with relevant data, Bloomberg deliberately continued to offer iSENSE on its terminals to harm iSentium's reputation and to dilute its market share while Bloomberg was planning and developing its own sentiment analysis application based on iSentium's proprietary and patented technology and methodologies in violation of both iSentium's patent and the MNDA.

33. Soon after iSentium stopped supporting iSENSE on Bloomberg's Terminals, Bloomberg announced its own sentiment analysis application. Upon information and belief, given Bloomberg's state of knowledge about sentiment analysis, the difficulty in creating such an application, and the speed in which Bloomberg purportedly launched its own product, iSentium maintains that Bloomberg improperly used iSENSE to create its own version of the sentiment analysis application.

34. iSentium's development of iSENSE was a complicated endeavor, requiring the investment of substantial capital and the coordination of internationally recognized experts in linguistics and computer science, over a period of five years.

35. Upon information and belief, Bloomberg did not have the expertise to re-invent the proprietary linguistic and computational technology upon which iSENSE was based. Moreover, Bloomberg certainly could not have done so in the approximately six months between the termination of the MNDA and the offering of its own sentiment analysis application for event-driven trading of exchange-traded funds without improperly incorporating iSentium's proprietary and patented technology.

36. Presently, Bloomberg's website indicates that its Bloomberg Professional services include sentiment analysis. *See* https://www.bloomberg.com/professional/product/event-driven-feeds/ (last visited Oct. 4, 2017).

## COUNT I: INFRINGEMENT OF THE '056 PATENT

37. iSentium hereby repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 36 above as though fully stated herein.

38. The USPTO duly issued the '056 patent on October 7, 2014, which has a priority date of at least March 22, 2011. iSentium is the exclusive owner of all rights to the '056 patent, including, but not limited to, the right to sue for damages.

39. On information and belief, Bloomberg has infringed and continues to infringe one or more claims of the '056 patent in violation of 35 U.S.C. § 271, literally, under the doctrine of equivalents, and/or jointly, in this state, in this judicial district, and elsewhere in the United States by, among other things, making, using, offering to sell, and/or selling systems and methods that implement, utilize or otherwise embody the patented invention, including, by way of example, certain social sentiment analysis products and services offered along with its "Bloomberg Terminal," which are described at least in part online at

https://www.bloomberg.com/company/announcements/trending-on-twitter-social-sentiment-analytics/ (last visited Oct. 4, 2017).

40. By notice of this Complaint, at least, each Defendant has been aware, since the filing date or before, of the '056 patent and its infringement of the '056 patent.

41. By notice of this Complaint, at least, each Defendant has been aware, since the filing date or before, that the accused instrumentalities are not staple articles or commodities of commerce suitable for substantial non-infringing use and are especially made and/or adapted for use in infringing the '056 patent.

42. Bloomberg's infringement of the '056 patent has been and continues to be willful.

43. Bloomberg's infringement of the '056 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

44. iSentium has been and is irreparably harmed by each Defendant's infringement of the '056 patent. iSentium has incurred and will continue to incur substantial damages, including monetary damages, unless each Defendant is enjoined from further acts of infringement.

45. To the extent that facts uncovered in discovery show that a Defendant's past infringement has been willful, Plaintiff reserves the right to seek enhanced damages and attorney fees for such past infringement.

## COUNT II: BREACH OF CONTRACT

46. iSentium hereby repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 45 above as though fully stated herein.

47. Bloomberg entered into the MNDA as a prerequisite to receiving confidential and proprietary information and trade secrets from iSentium.

48. The MNDA constitutes a valid and binding written contract, made for valid consideration and governed by New York law.

49. iSentium has performed or tendered performance of all of its material obligations under the MNDA.

50. By misappropriating, using, disclosing, and capitalizing on iSentium's confidential and proprietary information and trade secrets, including iSentium's confidential and proprietary sentiment analysis technology, iSENSE, Bloomberg has materially breached the terms of the MNDA, including without limitation, Section C regarding "Use of Confidential Information," and Section G regarding its development of similar software.

51. Pursuant to Section C of the MNDA, Bloomberg was authorized to use iSentium's confidential and proprietary information and trade secrets "solely for the Business Purpose and not in any way detrimental to [iSentium]." MNDA at ¶ C.1. Bloomberg also agreed to "take all reasonable measures to restrain its Representatives from prohibited or unauthorized disclosure or use of Confidential Information." MNDA at ¶ C.1.

52. In violation of these provisions, Bloomberg breached the MNDA by disclosing and/or using iSentium's confidential and proprietary information and trade secrets for purposes not contemplated by the MNDA and outside its scope. Bloomberg also utilized iSentium's confidential and proprietary information for Bloomberg's own benefit, without iSentium's approval. Specifically, Bloomberg developed a nearly identical replica of iSENSE, using social media sentiment analysis for event-driven trading of exchange-traded funds.

53. As a direct result of Bloomberg's breaches, iSentium has been irreparably harmed and has suffered damages in an amount to be determined at trial.

## COUNT III: MISAPPROPRIATION OF TRADE SECRETS

54. iSentium hereby repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 53 above as though fully stated herein.

55. In the course of business, iSentium owned and developed highly sensitive trade secrets, including, but not limited to, trade secrets related to iSentium's confidential and proprietary sentiment analysis technology, including, but not limited to, the methodologies for processing social media content and transforming the analyses into real-time graphs that are easily comprehended by end-users.

56. These trade secrets gave iSentium a competitive advantage over those who do not know or use these trade secrets. For example, iSentium's transformation methodologies for graphing and displaying of information assists its users in digesting massive amounts of analyzed data in a way familiar to the finance industry.

57. iSentium expended significant time, effort, and money developing these trade secrets. For example, iSentium went through numerous iterations of its transformation methodologies, expending a great deal of time and capital, to develop the comprehensible system utilized in its iSENSE application, and which was utilized via iSENSE on the Bloomberg Terminal platform before the MNDA was terminated. These trade secrets were not known outside of iSentium. These trade secrets are valuable to competitors of iSentium if disclosed to them, given the competitive advantage they afford in terms of end-user experience.

58. iSentium takes extensive precautions to limit disclosure and dissemination of its trade secrets, including, but not limited to, by requiring that entities and individuals who receive proprietary and confidential trade secret information, such as Bloomberg, sign non-disclosure agreements prior to receiving such information, internally compartmentalizing access to

proprietary methodologies, operating in geographically diverse silos, and requiring specific need-to-know bases for access to such methodologies.

59. Bloomberg and iSentium entered into the MNDA for the purpose of discussing the potential for Bloomberg to incorporate iSENSE on the Bloomberg Terminal platform. iSentium required that Bloomberg enter into the MNDA as a prerequisite to receiving iSentium's confidential and proprietary information and trade secrets, including iSentium's confidential and proprietary sentiment analysis technology which served as the backbone of iSENSE. Bloomberg thus entered into a confidential relationship with iSentium.

60. After entering into the MNDA, iSentium shared its trade secrets with Bloomberg, including, but not limited to, its transformation methodologies for social sentiment data display and related documents and information.

61. Pursuant to paragraph C of the MNDA, Bloomberg was authorized to use iSentium's confidential and proprietary information to "assist with the Business Purpose," and were expressly precluded from using that information for Bloomberg's own benefit or to iSentium's competitive disadvantage. Pursuant to paragraph C of the MNDA, Bloomberg also agreed to "take all reasonable measures to restrain its Representatives from prohibited or unauthorized disclosure or use of Confidential Information." MNDA at ¶ C.1.

62. iSentium did not authorize Bloomberg to use iSentium's trade secrets in any other manner.

63. Bloomberg breached the MNDA and misappropriated iSentium's trade secrets, including, but not limited to, by using iSentium's trade secrets in its Bloomberg Terminal. Additionally, Bloomberg disclosed the trade secrets to its own, and likely third party, application developers and used that information for Bloomberg's own gain without iSentium's consent, in

particular, to construct its own social sentiment application based on iSENSE, iSentium's trade secrets and confidential information, and to profit therefrom.

64. Bloomberg's disclosure and use of iSentium's trade secrets has caused iSentium to sustain injury and actual damages in an amount to be determined at trial.

65. As a result of Bloomberg's purposeful and intentional misappropriation of trade secrets, iSentium is entitled to judgment against Bloomberg in an amount to be determined at trial, which should include, without limitation: (a) iSentium's lost profits that were caused by Bloomberg's misappropriation of iSentium's trade secrets; (b) disgorgement of Bloomberg's ill-gotten profits; and (c) iSentium's attorneys' fees; or alternatively, (i) the imposition of a reasonable royalty for Bloomberg's unauthorized use of iSentium's trade secrets; and (ii) all other damages iSentium is entitled to recover, at law or in equity.

## COUNT IV: UNFAIR COMPETITION BY MISAPPROPRIATION

66. iSentium hereby repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 65 above as though fully stated herein.

67. Bloomberg has engaged in and continues to engage in unfair competition with iSentium by misappropriating iSentium's trade secrets and confidential and proprietary business information, created through the expenditure of labor, skill and money, and using them in competition against iSentium, thereby gaining an advantage in that competition, resulting in commercial damage to iSentium.

68. Bloomberg's misappropriation represents an inappropriate "free ride" because Bloomberg was burdened with little or none of the expense incurred by iSentium in developing its trade secrets and confidential and proprietary information, and even less risk.

69. Furthermore, even if this Court were to conclude that iSentium's confidential and proprietary business information, including iSentium's confidential and proprietary sentiment analysis technology, are not trade secrets, they nonetheless constitute a unique pecuniary interest developed by iSentium through the expenditure of labor, skill and money, and Bloomberg's use of those things in competition with iSentium gives Bloomberg a special advantage in competition – the proverbial "free ride" – to the economic detriment of iSentium.

70. Bloomberg's unlawful misappropriation entitles iSentium to recover from Bloomberg all damages proximately caused by the same. The misappropriation has provided Bloomberg with an unfair competitive advantage as Bloomberg has saved a significant amount of investment in research and development at iSentium's expense, allowing Bloomberg to compete more effectively, and providing a greater margin of profitability for Bloomberg.

71. Accordingly, iSentium is entitled to judgment against Bloomberg in an amount to be determined at trial, plus all interest and costs as allowed by law.

## COUNT V: PROMISSORY ESTOPPEL

72. iSentium hereby repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 71 above as though fully stated herein.

73. As stated above, Bloomberg made a clear and unambiguous promise to maintain the confidentiality of iSentium's confidential and proprietary information and trade secrets, and to refrain from using that information and those trade secrets for Bloomberg's benefit or to iSentium's competitive detriment.

74. iSentium substantially and reasonably relied on that promise when it provided Bloomberg with iSentium's confidential and proprietary business information and trade secrets, including iSentium's confidential and proprietary sentiment analysis technology.

75. iSentium's reliance on Bloomberg's promise was both reasonable and foreseeable. Bloomberg knew, or should have known, that iSentium would rely on Bloomberg's promises in providing iSentium's confidential and proprietary business information and trade secrets, including iSentium's sentiment analysis technology, iSENSE.

76. In violation of its promise, Bloomberg disclosed iSentium's confidential and proprietary business information and trade secrets, and used that information to Bloomberg's advantage and to iSentium's disadvantage. Specifically, Bloomberg used that information for Bloomberg's own gain without iSentium's consent – namely, Bloomberg's calculation of social sentiment data as an integer to facilitate the purchase or sale of publicly traded assets.

77. As a direct and proximate result of Bloomberg's actions, iSentium has suffered damages.

78. Accordingly, iSentium is entitled to judgment against Bloomberg in an amount to be determined at trial, plus all interest and costs as allowed by law.

## COUNT VI: UNJUST ENRICHMENT

79. iSentium hereby repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 78 above as though fully stated herein.

80. Bloomberg has obtained benefits from iSentium by taking undue advantage of iSentium. Bloomberg has taken undue advantage of iSentium by, among other things, wrongfully disclosing and utilizing iSentium's confidential and proprietary information and trade secrets, for Bloomberg's own financial gain and to iSentium's detriment. Specifically, Bloomberg used that information for Bloomberg's own gain without iSentium's consent: namely, the creation of Bloomberg's own product – an ersatz replica of iSentium's own

technology and processes, iSENSE, (also protected by the '056 Patent) – for the calculation of social sentiment data as an integer, in real-time, to facilitate the sale of publicly traded assets.

81. It is unconscionable for Bloomberg to retain any wrongfully received financial benefits in light of Bloomberg's wrongful conduct. Thus, Bloomberg, who received said benefits unjustly, should be required to make restitution to iSentium.

82. iSentium has suffered and will continue to suffer damages for losses caused by Bloomberg's wrongful conduct. Accordingly, iSentium is entitled to judgment against Bloomberg in an amount to be determined at trial, plus all interest and costs as allowed by law.

## COUNT VII: ACCOUNTING

83. iSentium hereby repeats, re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 82 above as though fully stated herein.

84. iSentium is entitled to an accounting from Bloomberg of the income realized from its unlawful infringement of the '056 Patent, Bloomberg's use of iSentium's confidential and proprietary information and trade secrets, including iSentium's confidential and proprietary sentiment analysis display methodologies.

85. iSentium has no adequate remedy at law to otherwise determine the amount of Bloomberg's ill-gotten income.

**WHEREFORE**, iSentium respectfully requests the following relief:

A. Judgment in favor of iSentium, and against Bloomberg, that Bloomberg is liable for infringement, contributing to the infringement, and/or inducing the infringement of one or more claims of the '056 Patent;

B. Judgment awarding iSentium damages adequate to compensate for Bloomberg's infringement in an amount to be proven at trial, together with pre-judgment and post-judgment interest and costs, as fixed by the Court;

| | |
|---|---|
| C. | Judgment awarding iSentium damages adequate to compensate for Bloomberg's breach of the MNDA in an amount to be proven at trial, together with pre-judgment and post-judgment interest and costs, as fixed by the Court; |
| D. | Judgment awarding iSentium damages adequate to compensate for Bloomberg's misappropriation of trade secrets, unfair competition, promissory estoppel, and unjust enrichment in an amount to be proven at trial, together with pre-judgment and post-judgment interest and costs, as fixed by the Court; |
| E. | An Order of this Court permanently enjoining Bloomberg, its officers, agents, servants, and employees, as well as any persons in active concert and participation with any of them, from (i) making, selling, or distributing any product derived from iSentium without an accounting and payment of royalties due to iSentium; and (ii) knowingly assisting, inducing, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to herein; |
| F. | An Order of this Court permanently enjoining Bloomberg, its officers, agents, servants, and employees, as well as any persons in active concert and participation with any of them, from further use or disclosure of iSentium's confidential and proprietary information and trade secrets; |
| G. | An Order of this Court requiring Bloomberg to account for the income realized from its unlawful use of iSentium's confidential and proprietary information and trade secrets; |
| H. | An Order of this Court requiring that Bloomberg immediately return any and all documents, data, or other materials that directly or indirectly reveal any of iSentium's confidential and proprietary information and trade secrets; |
| I. | Judgment declaring that this is an exceptional case and awarding iSentium its reasonable costs and attorney fees in this matter, pursuant to 35 U.S.C. § 285; |
| J. | Judgment in favor of iSentium, and against Bloomberg, that interest, costs, and expenses be awarded in favor of iSentium; and |
| K. | Such other and further relief as the Court deems just and proper. |

**JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), iSentium hereby demands a trial by jury of all issues triable as of right to a jury.

Dated: New York, New York
October 4, 2017

**BLACKSTONE LAW GROUP LLP**
/s/ John D. Lovi
John D. Lovi (john@blackstone-law.com)
Alexander J. Urbelis (alex@blackstone-law.com)
Justin B. Perri (justin@blackstone-law.com)
1201 Broadway, 9th Floor
New York, New York 10001
Telephone/ Facsimile: (212) 779 3070

*- and -*

Mark R.W. Bellermann (mark@brakehughes.com)
Brake Hughes Bellermann LLP
1701 Pennsylvania Avenue, NW, Suite 300
Washington, DC 20006
Telephone: (202) 470 6453
Facsimile: (202) 470 6464

*Attorneys for Plaintiff*
*iSentium, LLC*