UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
iSENTIUM, LLC,

                        Plaintiff,                      17-cv-7601 (PKC)

    -against-                            OPINION
                                                        AND ORDER

BLOOMBERG FINANCE L.P., BLOOMBERG
L.P. and BLOOMBERG INC.,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        On October 29, 2018, this Court issued an Opinion and Order dismissing a patent infringement claim asserted by iSentium, LLC ("iSentium") against defendants Bloomberg Finance L.P., Bloomberg L.P. and Bloomberg Inc. (collectively, "Bloomberg"). The Court invited the parties to make further submissions as to whether it should exercise supplemental jurisdiction over the remaining state law claims. See iSentium, LLC v. Bloomberg Fin. L.P., 2018 WL 5447503 (S.D.N.Y. Oct. 29, 2018).

        In letter-briefs of November 13, 2018, the parties asserted that this Court continues to have federal question jurisdiction over the case because iSentium's claim for misappropriation of trade secrets is brought pursuant to both the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1831, et seq., Pub. L. No. 114-153 (the "DTSA"), and New York common law. (Docket # 33, 34.) The parties correctly note that paragraph 7 of the Complaint cites 18 U.S.C. § 1831, and they agree that federal question jurisdiction therefore exists. The Court concludes that it has federal question jurisdiction and will proceed to decide Bloomberg's motion to dismiss iSentium's remaining claims.

For the reasons that will be explained, the Court concludes that the Complaint plausibly alleges that Bloomberg misappropriated iSentium's trade secrets under the DTSA and New York law. The claims of unjust enrichment and promissory estoppel are dismissed as duplicative to iSentium's breach of contract claim.

BACKGROUND.

iSentium creates applications that analyze "massive amounts of individual social media content" and use this "unstructured data" as "indicators" in business and politics.[1] (Compl't ¶ 13.) In or around early 2013, iSentium and Bloomberg began discussions about incorporating iSentium's technology into Bloomberg terminals. (Compl't ¶ 15.) The parties entered into a mutual non-disclosure agreement ("NDA") drafted by Bloomberg, which the Complaint characterizes as having a "very broad" definition of confidential information. (Compl't ¶¶ 16-21.) After the NDA's execution, iSentium gave Bloomberg "executable versions" of its sentiment-analysis technology, which it called iSENSE. (Compl't ¶ 22.) Information provided by iSentium allegedly included trade secrets related to "its methodologies for processing social media content and transforming its analysis into real-time graphs that are easily comprehended by an end-user." (Compl't ¶¶ 23-25.) Bloomberg incorporated iSENSE into its terminals. (Compl't ¶¶ 24-25.)

In or around February 2016, iSentium altered aspects of iSENSE, which made it incompatible with Bloomberg terminals. (Compl't ¶ 26.) iSentium asked Bloomberg to remove iSENSE from its terminals, and the parties agreed to terminate the NDA. (Compl't ¶¶ 27-28.) iSentium asserts that despite the NDA's termination, Bloomberg did not return or destroy confidential information, and continued to use iSENSE in its terminals. (Compl't ¶¶ 29-32.)

---

[1] Additional background on iSentium's business and technology is described in the Opinion and Order dismissing the patent infringement claim. See 2018 WL 5447503.

The Complaint asserts that Bloomberg also began to develop its own sentiment-analysis technology, which was "based on" iSentium's proprietary technology, in violation of the NDA. (Compl't ¶¶ 32-34.) The Complaint alleges upon information and belief that Bloomberg did not have the expertise to "re-invent" the proprietary technology used in iSENSE during the six-month window between the termination of the NDA and the release of Bloomberg's own sentiment-analysis application. (Compl't ¶ 35.)

RULE 12(b)(6) STANDARD.

Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

DISCUSSION.

> I. THE COMPLAINT PLAUSIBLY ALLEGES MISAPPROPRIATION OF TRADE SECRETS.

Bloomberg moves to dismiss iSentium's claim that Bloomberg misappropriated its trade secrets. Bloomberg urges that the Complaint does not identify with sufficient particularity the information alleged to constitute a trade secret. As noted, iSentium's trade secrets claim is brought under both the DTSA and New York common law. The Court therefore

considers whether iSentium has plausibly alleged misappropriation of trade secrets under both the DTSA and the law of New York.

For the reasons that will be explained, the Court concludes that the allegations describing iSentium's purported trade secrets, while broad, are sufficient to give Bloomberg notice of the claim asserted against it, as required by Rule 8, Fed. R. Civ. P.

A. <u>The Provisions of the DTSA Governing Misappropriation of Trade Secrets.</u>

The DTSA defines a trade secret as "all forms and types of finance, scientific, technical or engineering information" that "the owner thereof has taken reasonable measures to keep such information secret," and that has an economic value because it is not "generally known." 18 U.S.C. § 1839(3). It defines "misappropriation" to include the use of a trade secret by a person with knowledge of the duty to maintain its secrecy. 18 U.S.C. § 1839(5)(B)(ii). "The DTSA, which created a federal cause of action for the misappropriation of trade secrets used in interstate commerce, requires that the plaintiff establish 'an unconsented disclosure or use of a trade secret by one who . . . at the time of disclosure, knew or had reason to know that the trade secret was acquired . . . under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'" <u>Broker Genius, Inc. v. Zalta</u>, 280 F. Supp. 3d 495, 510 (S.D.N.Y. 2017) (Stein, J.) (internal citation omitted; quoting <u>Free Country Ltd. v. Drennen</u>, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016)).

"The DTSA applies only to acts of misappropriation that occur on or after the effective date of the Act, May 11, 2016." <u>Phoenix Ancient Art, S.A. v. J. Paul Getty Tr.</u>, 2018 WL 1605985, at *9 (S.D.N.Y. Mar. 29, 2018) (Ramos, J.). Bloomberg does not urge that any

claim under the DTSA should be dismissed on the basis that the alleged misconduct predated the statute's effective date.[2]

B. New York Law Governing Misappropriation of Trade Secrets.

"The requirements for showing a misappropriation of a trade secret are similar under state and federal law." Free Country, 235 F. Supp. 3d at 565 (discussing DTSA and New York law). Under New York law, "[t]o prevail on a claim for misappropriation of trade secrets, a plaintiff must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means. A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Schroeder v. Pinterest Inc., 133 A.D.3d 12, 27 (1st Dep't 2015) (quotation marks and internal citation omitted). "While neither the New York Court of Appeals nor the United States Court of Appeals for the Second Circuit has expressly required trade secrets to be identified with any particular degree of specificity, it is evident that a 'vague and indefinite' piece of information cannot be protected as a trade secret." Broker Genius, 280 F. Supp. 3d at 515.

C. The Complaint Adequately Identifies the Trade Secrets Claimed by iSentium.

Bloomberg urges that the trade secrets claim should be dismissed because the Complaint does not adequately identify the trade secrets at issue. Bloomberg does not expressly

---

[2] According to the Complaint, iSentium requested termination of the NDA on or about March 1, 2016 and Bloomberg confirmed the termination on March 7, 2016. (Compl't ¶ 28.) The Complaint alleges that for approximately six months after the NDA's termination, Bloomberg used iSentium's proprietary information to develop its own sentiment-analysis technology. (Compl't ¶ 35.) Use through approximately September 2016 would plausibly post-date the May 11, 2016 effective date of the DTSA. Courts have concluded that a plaintiff plausibly alleges a violation of the DTSA if a complaint identifies the use of a trade secret after the effective date of May 11, 2016. Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (Ellis, U.S.M.J.); Phoenix Ancient Art, 2018 WL 1605985, at *9 (observing in dictum that use of trade secrets after effective date is actionable under the DTSA).

rely on Rule 9(b), Fed. R. Civ. P., but it repeatedly asserts that the allegations fail to describe the trade secrets with adequately particularity." The Court concludes, however, that the Complaint's allegations are sufficient to provide Bloomberg with notice of the claimed trade secrets, which is all that Rule 8 requires.

Under the NDA, Bloomberg was authorized to use iSentium's confidential and proprietary information to assist with a business purpose, but was expressly precluded from using that information for Bloomberg's own benefit or to iSentium's competitive disadvantage. (Compl't ¶ 61.) In identifying the trade secrets allegedly misappropriated by Bloomberg, the Complaint describes iSentium's "transformation methodologies for graphing and displaying" information, in order to "assist[] its users in digesting massive amounts of analyzed data in a way familiar to the finance industry." (Compl't ¶ 56.) They similarly are identified as "transformation methodologies for social sentiment data display and related documents and information." (Compl't ¶ 60.) The "transformation methodologies" are not further specified.

While these allegations are broad, they are sufficient to provide Bloomberg with fair notice of the claim brought against it. Comparable descriptions have been held to be adequate to identify a trade secret at the pleading stage. In Next Communications, Inc. v. Viber Media, Inc., 2016 WL 1275659, at *4 (S.D.N.Y. Mar. 30, 2016), Judge Sullivan concluded that a complaint's description of a "unique technique for routing calls, allowing for detailed traffic monitoring, reporting, and billing" was adequate to identify the claimed trade secret. The Complaint alleged that this technology permitted improvements in video conferencing, and described the trade secrets as the "specific components used" to implement the call-routing technique. Id. Plaintiffs also alleged that they had provided the defendant with a detailed description of this technology. Id. Next Communications concluded that plaintiffs had "offered

descriptions of the technology they seek to protect that are sufficient for the Court to discern the general contours of the alleged trade secrets without compromising their secrecy and for Defendant to be put on notice of the claim." Id.

Other district courts have concluded that similar descriptions were sufficient to provide a defendant with notice of the claimed trade secrets. See, e.g., Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co., 2016 WL 1370937, at *3 (E.D.N.Y. Apr. 6, 2016) (claim that plaintiff's proprietary program "enhanced" fraud detection, enabled "customization and automation of the claims management process," monitored employee efficiency and detected fraudulent prescriptions was sufficient to identify trade secrets) (Hurley, J.); Medtech Prod. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 789 (S.D.N.Y. 2008) ("The Court recognizes that Medtech, for the most part, does not specify the particular trade secrets at issue in this case, but instead categorizes them generally as 'manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors.' However, specificity as to the precise trade secrets misappropriated is not required in order for Medtech to defeat the present Motions to Dismiss.") (Karas, J.); Sorias v. Nat'l Cellular USA, Inc., 124 F. Supp. 3d 244, 259 (E.D.N.Y. 2015) ("though general," complaint's identification of trade secrets as "data and designs of a specific phone charger with horizontally folding A/C prongs" was sufficient to give defendants fair notice of the claim) (Kuntz, J.).

Bloomberg points to language in the undersigned's Memorandum and Order in Alexander Interactive, Inc. v. Leisure Pro Ltd., 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014), which stated that "a plaintiff must plead facts with sufficient particularity to provide defendants 'fair notice of what the claim is and the grounds upon which it rests.'" (quoting Twombly, 550 U.S. at 555). Alexander proceeded to state that "[t]his requires, at minimum, that

the plaintiff generally identify the trade secrets at issue." Id. It concluded that the Complaint failed to adequately identify a trade secret because it described information that was already subject to public disclosure and information that was not plausibly alleged to provide a business advantage. Id. Those deficiencies are not present in this Complaint. Bloomberg urges that the claimed trade secrets could overlap with descriptions contained in the '056 Patent, and therefore render them public information, but "[t]o the extent the exact contours of [iSentium's] trade secrets are unclear, [Bloomberg] can explore those contours through discovery." Capricorn, 2016 WL 1370937, at *3.

Because the Complaint adequately provides Bloomberg with notice of the information alleged to be a trade secret, Bloomberg's motion to dismiss the misappropriation of trade secrets claim is denied.

## II. THE MOTION TO DISMISS THE BREACH OF CONTRACT CLAIM IS DENIED.

Count II of the Complaint alleges that Bloomberg breached provisions of the NDA that limited its use of confidential information and its own development of software similar to iSentium's. (Compl't ¶¶ 46-53.) Bloomberg moves to dismiss this claim on the grounds that a failure to allege misappropriation of trade secrets requires dismissal of the contract claim. (Def. Mem. at 25.) However, because iSentium plausibly alleges the misappropriation of trade secrets and some or all of these trade secrets are protected by the NDA, Bloomberg's motion to dismiss the contract claim is denied.

## III. iSENTIUM'S CLAIMS OF UNJUST ENRICHMENT AND PROMISSORY ESTOPPEL ARE DISMISSED.

Bloomberg moves to dismiss iSentium's claims of promissory estoppel and unjust enrichment as duplicative of its breach of contract claim. As noted, the contract claim alleges

that Bloomberg breached the NDA by using and capitalizing on confidential information governed by the NDA. (Compl't ¶¶ 50-53.) iSentium's promissory estoppel claim similarly alleges that Bloomberg breached an unambiguous promise not to disclose iSentium's confidential and proprietary business information. (Compl't ¶¶ 73-76.) The unjust enrichment claim alleges that Bloomberg wrongfully disclosed and used iSentium's confidential and proprietary information for Bloomberg's own benefit and to the detriment of iSentium, specifically by creating "an ersatz replica" of iSentium's own technology. (Compl't ¶¶ 80-82.) It alleges that Bloomberg wrongfully benefitted from its misconduct. (Compl't ¶ 81.)

Under New York law, a plaintiff may not proceed with a claim of promissory estoppel if there is a valid agreement between the parties. See, e.g., Wald v. Graev, 137 A.D.3d 573, 574 (1st Dep't 2016) (affirming dismissal of promissory estoppel claim as "duplicative" of a breach of contract claim); Susman v. Commerzbank Capital Markets Corp., 95 A.D.3d 589, 590 (1st Dep't 2012) ("[T]o the extent the second cause of action was for promissory estoppel, such a claim cannot stand when there is a contract between the parties."). Because iSentium has alleged the breach of a valid agreement, Bloomberg's motion to dismiss the claim of promissory estoppel is granted.

Also, under New York law, when a plaintiff has asserted a viable breach of contract claim, an unjust enrichment claim should be dismissed as redundant. See, e.g., Schultz v. Gershman, 68 A.D.3d 426, 427 (1st Dep't 2009) ("Plaintiffs' unjust enrichment cause of action is barred by the existence of the contract between the parties."); Sergeants Benevolent Ass'n Annuity Fund v. Renck, 19 A.D.3d 107, 119 (1st Dep't 2005) ("Since this dispute is governed by the terms of an express contract, the cause of action for unjust enrichment was properly dismissed as redundant."). Because the conduct alleged in support of the unjust

enrichment claim falls within the breach of contract claim, the unjust enrichment claim is dismissed as redundant.

The claims of promissory estoppel and unjust enrichment are therefore dismissed.

CONCLUSION.

Bloomberg's motion to dismiss the Complaint is GRANTED as to iSentium's claims of promissory estoppel and unjust enrichment, and DENIED as to its claims for the misappropriation of trade secrets and breach of contract.

There will be a pretrial conference in this case on December 14, 2018 at 12 p.m.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
       November 16, 2018