

**JOHN D. LOVI**
MANAGING PARTNER

P: (212) 779 3070 x 104
F: (212) 779 3070
john@blackstone-law.com

December 14, 2018

<u>Via ECF</u>

Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    <u>*iSentium LLC v. Bloomberg Finance L.P. et al.*, 17-cv-7601(PKC)</u>

Dear Judge Castel:

In response to Defendants' pre-motion letter, dated December 10, 2018 (Doc. #38), seeking leave to file a summary judgment motion, and pursuant to Your Honor's Individual Practice Rule 4(A)(iv), we respectfully submit this letter on behalf of Plaintiff iSentium LLC ("iSentium"). A pretrial conference has been scheduled for December 14, 2018 at 12:00 p.m.

Defendants' letter states that it seeks to file a summary judgment motion based "in large part" on a Developer Agreement for Bloomberg Application Portal ("Developer Agreement"), which Bloomberg claims the parties executed in May 2014. After chastising iSentium for not mentioning this agreement in its Complaint and claiming that the agreement is "fatal" to iSentium's claims here, Bloomberg fails to attach a copy of this agreement to its letter. Defendants' quote liberally from this agreement, so they must have been looking at something.

iSentium has searched its files and cannot find a copy of an executed Developer Agreement. iSentium has located earlier unsigned drafts of such an agreement showing various changes, but no final executed agreement has been found. If Bloomberg intends to move for summary judgment based almost entirely on the terms of this agreement, obviously they must produce it, or whatever it is they have quoted from. That they have not indicates to us that either (a) they don't have a final executed version of the document in their possession, which would render any summary judgment motion frivolous, or (b) they are playing games here. Neither answer is flattering to their position.

### The Developer Agreement is Irrelevant

Even if Bloomberg can produce an executed Developer Agreement, that agreement does not say what they claim it says.  Based on the text of the draft Developer Agreement we have in our possession and the language Bloomberg selectively quotes in its letter, it is clear that any limitation of liability or statute of limitations contained in the Developer Agreement relates to claims "arising out of or pertaining **to this Agreement,"** meaning the Developer Agreement (*see* §9(a)(v)).  iSentium, however, is not alleging a violation of the Developer Agreement (which is why there is no mention of it in the Complaint).  Therefore, this provision does not apply.

If Bloomberg is claiming that the Developer Agreement's one-year statute of limitation provision applies to the MNDA because it "conflicts" with the MNDA and, therefore, the terms of the Developer Agreement control, that argument is contradicted by the plain language of the Developer Agreement quoted above.  That is, claims arising under the MNDA are controlled by the provisions of the MNDA, and claims arising under the Developer Agreement are controlled by the provisions of the Developer Agreement.  Here, iSentium alleges breach of contract under the MNDA, so there is no conflict with the Developer Agreement and, therefore, the Developer Agreement does not apply.

Moreover, the basic tenets of contract construction would argue against Bloomberg's tortured reading of the Developer Agreement.  It is very unlikely that iSentium – or any party – would undo key enforcement provisions of an MNDA a year later in the "Miscellaneous Provisions" section of a separate agreement.  In addition, the issue of the language in the two agreements clearly raises fact questions that would defeat any summary judgment motion.

Finally, Bloomberg doesn't seem to believe its own position because, if they truly believed that the Developer Agreement controlled here, they would have moved to compel arbitration, as the Developer Agreement apparently includes a mandatory arbitration provision (*see* §9(d)), unless Bloomberg intends to make yet another motion down the road to compel arbitration.

### Bloomberg is Attempting to Avoid Discovery

It is obvious to us that Bloomberg is seeking simply to avoid discovery at any cost because they know and fear what that discovery will reveal.  Indeed, their entire legal strategy to date suggests that this is true.  In nearly every submission to this Court Bloomberg has claimed unequivocally in one form or another that "Bloomberg independently developed its own sentiment analysis application that differs in fundamental respects from iSentium's application." (Pre-motion letter Doc #38).

However, if Bloomberg actually believed that their sentiment analysis is completely different from iSentium's and was developed entirely separate from iSentium's proprietary data, why did Bloomberg move to invalidate iSentium's patent?  If Bloomberg is to be believed, there would be no need to have moved against iSentium's patent.  Bloomberg's product wouldn't infringe iSentium's patent because it is "so fundamentally different" from iSentium's product.  Why did Bloomberg spend tens of thousands of dollars in legal fees – and waste a year of this Court's time – on a perfectly useless motion?  Indeed, the fact that Bloomberg made its patent motion confirms to us that they are worried about the infringement issue (now an infringement of trade secrets).  The fact that Bloomberg is now ginning up a so-called summary judgment motion – which claims could have and should have been made as part of its Rule 12(b)(6) motion – confirms again to us that they are worried about discovery.

The evidence of any trade secrets misappropriation or MNDA breach is uniquely within the possession and control of Bloomberg.  Only they know what the evidence will reveal.  So, whenever Bloomberg tries to limit the scope of iSentium's discovery or suggest what areas of discovery we should be limited to inquiring, we naturally are suspicious of their motives and grow more determined that our allegations are well-founded.

Moreover, iSentium has no intention to use discovery as a "fishing expedition" or to impose crippling discovery expenses on Bloomberg (if that were even possible).  We have already provided Bloomberg's counsel with a draft of our first discovery request and asked them to tell us in advance whether any of the requests are vague, overbroad, or unduly burdensome so we can improve the document and avoid unnecessary discovery motion practice.  Our draft requests were prepared in close consultation with iSentium personnel that have intimate knowledge of this subject matter and Bloomberg's operations (having been involved in the three-year business relationship between iSentium and Bloomberg).  The ten numbered requests are specifically tailored to seek out the most relevant information from Bloomberg to help determine the merits of this case.

Finally, we submit that if Bloomberg does file a summary judgment motion that discovery not be stayed and be allowed to proceed forthwith.

**Bloomberg Misunderstands the Allegations in the Complaint**

Bloomberg's pre-motion letter claims that it knows better than iSentium what the allegations in the Complaint assert, particularly the meaning of the allegations in paragraph 25 of the Complaint regarding a February 20, 2014 Bloomberg press release.  Bloomberg claims that paragraph 25 intended to allege that the press release was about iSentium's product, not

Bloomberg's. This is simply untrue. The press release, a portion of which is reprinted in the Complaint, is clear that it refers to BSV, a Bloomberg product, and that was iSentium's point. Moreover, paragraph 25 and the press release refer to BSV as "social sentiment *analytics*" not social sentiment "*analysis.*" This is because BSV didn't do anything like analysis of social sentiment; it was simply a counting program than measured social sentiment volume.

As we have stated on several occasions, and is clear from the Complaint, iSentium had a three-year business relationship with Bloomberg starting around June 2013 with the execution of the MNDA; iSentium provided Bloomberg and its scientists and program developers with detailed information regarding iSentium's sentiment analysis product, called iSENSE; and that after iSentium terminated that relationship in May 2016, Bloomberg announced the launch of its own sentiment analysis product in or around July 2016 that looked and was described by Bloomberg exactly like iSENSE. Because iSentium was well aware of the competence of Bloomberg's scientists and developers over the course of their business relationship, iSentium reasonably concluded that Bloomberg's new sentiment analysis product could not have been developed without significant cribbing of iSentium's proprietary data. (Complaint ¶ 35). It was on the basis of these factual allegations that iSentium filed this lawsuit.

However, iSentium does not know, and the Complaint does not allege, that Bloomberg first started misappropriating its trade secrets and proprietary information only after the MNDA was terminated in 2016. Indeed, we have no idea when this infringement first occurred. Thus, it very well could have occurred from the outset of the relationship in 2013. That is something to be determined through discovery. The point of paragraph 25 is to allege a factual basis for why iSentium *now believes* the infringement may have started much earlier in the relationship. Thus, paragraph 25 and the preceding paragraphs allege that Bloomberg was getting our proprietary information in 2013 and was interested enough in this type of product to launch its own facsimile in February 2014.

As the evidence will show, Bloomberg's BSV product in 2014 could not be called "sentiment analysis." It was, in fact, a crude, elementary product limited to displaying social media volume information, not analysis of social media. That is why at the time iSentium did not suspect Bloomberg of misusing its data. To compare iSENSE with BSV is to compare a Ferrari with a horse and buggy. Yes, they are both modes of transportation, but the owner of a Ferrari would never suspect the owner of the horse and buggy with reverse engineering his product and coming up with that.

Nevertheless, it might very well be the case that Bloomberg's less than stellar group of engineers were in fact using iSentium's information back in 2013 and the best they came up

with in February 2014 was BSV.  The fact that BSV was a lousy product and inferior in every respect to iSENSE does not mean that Bloomberg did not violate the MNDA and misappropriate trade secrets in its development.  After three years of access to iSentium's data, Bloomberg appears finally to have created a product similar enough to iSENSE to wake iSentium's interest into how Bloomberg might have been conducting itself from the outset of the relationship.  That is why iSentium is entitled to seek discovery of Bloomberg's development of its "sentiment analysis" product from the outset of that development or the start of the iSentium/Bloomberg relationship, whichever is earlier.  That is the only way to get to the bottom of the issue at the heart of this case.

### iSentium's Claims are Not Time Barred

Bloomberg asserts that iSentium's trade secret claims are time-barred under the DTSA because that statute "does not retroactively apply to any misappropriation that precedes its enactment" and "the three-year statute of limitations begins to run as soon as the interest holder learns or in 'exercise of reasonable diligence' should have learned that trade secrets were misappropriated."  (*See* Pre-Motion Letter (Doc #38) citing *Champions League, Inc.* and *Syntel Sterling Best Shores Mauritius Ltd.*).  This argument is patently wrong.

*First*, *Champions League* distinguished the allegations in that case from those in *Syntel* because the plaintiff in *Champions League* did not allege that the defendants continued to use its trade secrets, so the alleged wrongful act was not treated as having continued to occur after the date of the enactment of DTSA.  *See Champions League, Inc. v. Woodard*, 224 F.Supp.3d 317, 326 (S.D.N.Y. 2016) (citing *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Group, Inc.*, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016).

On the other hand, the court in *Syntel* recognized that:

> "The plain language of the Act defines misappropriation to include 'disclosure or use of a trade secret without the consent of another.' 18 U.S.C. 1839(5). Accordingly, as Defendants allege that Syntel continues to use its Intellectual Property to directly compete with Trizetto, the wrongful act continues to occur after the date of the enactment of DTSA."

*Syntel* at *6; *see also Tesla Wall Sys., LLC v. Related Companies, L.P.*, 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017) ("as long as plaintiff continues to use trade secrets acquired wrongfully prior to enactment, the Act's requirements are met").  Moreover, the court in *Tesla* found that the question of whether plaintiff's alleged damages occurred from pre-DTSA enactment use of trade secrets was "not ripe" and would only ripen "following discovery."  *Id.*

Here, iSentium alleges continuing trade secret misuse after the enactment of the DTSA. For example, the Complaint (¶ 36) states that "Presently, Bloomberg's website indicates that its Bloomberg Professional services include sentiment analysis." The Complaint (¶ 39) also alleges that "Bloomberg has infringed and continues to infringe one or more claims of the '056 patent." The patent claim, as the Court recognized at oral argument, was pleaded in the alternative as a DTSA claim, and that paragraph was incorporated in the Trade Secrets claim at ¶ 54. iSentium also claims that it "has suffered and will continue to suffer damages for losses caused by Bloomberg's willful conduct" (¶ 82) and seeks as relief an "Order of this Court permanently enjoining Bloomberg" from continuing to engage in this conduct (Compl. at page 17).

*Second*, Bloomberg is asking this Court to believe as undisputed fact that iSentium must have had knowledge that its trade secrets were being misappropriated in 2014 because a Bloomberg press release on February 20, 2014 stated that it was providing some form of social sentiment analytics called Bloomberg Social Velocity. As explained above, this BSV product was not the same as iSENSE and iSentium could not reasonably have concluded from this that Bloomberg was misappropriating its data. That did not occur until Bloomberg's press release in July 2016.

*Finally*, whether iSentium knew or should have known about Bloomberg's misappropriation is a question of "reasonable diligence," which is a question of fact. *See, e.g., Thompson v. Metro. Life Ins. Co.*, 149 F.Supp.2d 38, 50 (S.D.N.Y. 2001) ("The determination of whether a plaintiff was put on 'inquiry notice' of his or her claim is clearly a question of fact.").

**Bloomberg Should Be Ordered to File an Amended Answer**

We ask that the Court order Bloomberg to serve and file an amended answer to the Complaint because the answer Bloomberg filed (Doc #37) failed to respond to ¶¶ 37–45 of the Complaint on the grounds that "Bloomberg has no obligation to respond to Count I and paragraphs 37–45 as the Court has dismissed Count I of the Complaint."

Although the Court did dismiss under 12(b)(6) ***the claim*** that Bloomberg infringed iSentium's patent on the grounds that the patent was invalid, the Court did not strike ***the allegations*** in the Complaint under Rule 12(f). Indeed, the allegations in Count I were re-alleged and incorporated by reference "as if fully stated herein" in the remaining counts in this case, including breach of contract (Complaint ¶ 46) and misappropriation of trade secrets (Complaint ¶ 54).

The reason the allegations were incorporated into the subsequent counts is because the same set of allegations may give rise to several different – even alternative – causes of action. *See,*

*e.g.,* Rule 8(a)(3).  This Court seemed to acknowledge that iSentium's patent claims may also constitute a trade secret claim during oral argument on Bloomberg's motion to dismiss.

Moreover, Bloomberg's Answer responds to patent allegations elsewhere in the Complaint, so their position appears entirely unfounded and inconsistent.  (*See* Answer at ¶¶ 10–13).

**Briefing Schedule**

If Defendants intend to proceed with filing a summary judgment motion, iSentium does not object to their proposed filing schedule, except that Plaintiff requests that its responsive papers be due on January 31, 2019 due to the upcoming holidays and a scheduling conflict the prior week, and we request that Defendants' reply be filed (7) days thereafter on February 7, 2019.

Respectfully submitted,

John D. Lovi
*Counsel for Plaintiff iSentium LLC*