UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
iSENTIUM, LLC,

                        Plaintiff,                      17-cv-7601 (PKC)

      -against-                                      OPINION
                                                            AND ORDER

BLOOMBERG FINANCE L.P., BLOOMBERG
L.P. and BLOOMBERG INC.,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff iSentium, LLC ("iSentium") brings claims related to its computer application for assessing investor sentiments by analyzing social media posts expressing views about a potential investment. For a period of time, an iSentium app was accessible to users through defendants' widely used Bloomberg Terminals. To facilitate the placement of its app on the Bloomberg Terminals, iSentium entered into two contracts with defendants Bloomberg Finance L.P., Bloomberg L.P. and Bloomberg Inc. (collectively, "Bloomberg"). The first was a Mutual Nondisclosure Agreement of June 11, 2013 (the "NDA"), and the second was a "Developer Agreement for Bloomberg Application Portal" of May 1, 2014 (the "Developer Agreement"). The NDA provided that any dispute arising under it was subject to the exclusive jurisdiction of New York's state and federal courts and did not specify any limitations period. The subsequent Developer Agreement required iSentium to bring any dispute arising thereunder exclusively in arbitration, within one year of the claim's accrual.

        iSentium commenced this action on October 4, 2017. (Docket # 1.) It brought claims under federal law alleging patent infringement, 35 U.S.C. § 1, et seq., and a violation of

the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 (the "DTSA"), as well as claims for breach of contract and misappropriation of trade secrets under New York law. The Court granted Bloomberg's motion to dismiss the patent infringement claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. iSentium, LLC v. Bloomberg Fin. L.P., 343 F. Supp. 3d 379 (S.D.N.Y. 2018). It granted Bloomberg's subsequent Rule 12(b)(6) motion to dismiss claims of unjust enrichment and promissory estoppel as duplicative of iSentium's breach of contract claim. iSentium, LLC v. Bloomberg Fin. L.P., 2018 WL 6025864 (S.D.N.Y. Nov. 16, 2018).

Bloomberg now moves for summary judgment in its favor on the remaining claims for violation of the DTSA, misappropriation of trade secrets and breach of contract. (Docket # 49.) It urges that those claims fall within the dispute-resolution provision of the Developer Agreement, and that the claims are time-barred because they were filed more than one year after they accrued. Neither side urges that discovery is required to adjudicate Bloomberg's motion.

For the reasons that will be explained, the Court concludes that pursuant to the plain language of the Developer Agreement, iSentium agreed that its claims would be subject to a one-year limitations period. In opposition, iSentium does not point to evidence that would permit a reasonable trier of fact to conclude that its claims are timely.

Bloomberg's motion for summary judgment will therefore be granted.

BACKGROUND.

iSentium has developed a proprietary application that identifies and analyzes market-related opinions posted to social media, anticipates changes in the price of publicly traded stocks, and makes that information available to traders. See 343 F. Supp. 3d at 384-87

(summarizing iSentium's description of its technology). It labels this technology "sentiment analysis." See id.

Bloomberg and iSentium began a business relationship in early 2013, when they started to discuss incorporating iSentium's sentiment-analysis app, called "iSENSE," into the Bloomberg Terminal platform. (Def. 56.1 ¶ 6; Pl. 56.1 Resp. ¶ 6.) On or about June 11, 2013, Bloomberg and iSentium entered into the NDA. (Def. 56.1 ¶¶ 1, 7, 8 & Ex. A; Pl. 56.1 Resp. ¶¶ 1, 7, 8.) The NDA provided for the exchange of confidential information between Bloomberg and iSentium, including possible trade secrets. (NDA § B.) It provided that the parties "shall treat confidentially and shall not disclose" such information, nor use such information "in any way detrimental to the Disclosing Party." (Id. § C(1).) A forum-selection clause in the NDA provided for the exclusive jurisdiction of New York and federal courts "in connection with any matters arising out of this NDA . . . ." (Id. § G.) After the NDA's execution, iSentium gave information to Bloomberg about its iSENSE technology; iSentium asserts that this information included its trade secrets. (Def. 56.1 ¶ 9; Pl. 56.1 Resp. ¶ 9.) iSentium alleges that Bloomberg breached the NDA when it used confidential and proprietary information to develop "a nearly identical replica" of iSENSE. (Compl't ¶ 52.)

On or about May 1, 2014, Bloomberg and iSentium entered into a second agreement, titled "Developer Agreement for Bloomberg Application Portal" (the "Developer Agreement"). (Def. 56.1 ¶¶ 3, 13 & Ex. C; Pl. 56.1 Resp. ¶¶ 3, 13.) Like the NDA, the Developer Agreement included provisions requiring the parties to maintain the confidentiality of their respective proprietary information: For instance, the NDA and Developer Agreement had near-identical language barring Bloomberg from reverse-engineering the iSENSE app. (Dev. Agrm't § 7(a)(ii) (barring Bloomberg from attempting to "reverse engineer, decompile or

disassemble the Developer Apps for any improper purpose."); NDA § C(6) (the parties "shall not, and shall not assist, others to, disassemble, decompile, or reverse engineer the Disclosing Party's Confidential Information . . . .").) The Complaint quotes relevant language from the NDA but makes no mention of the Developer Agreement. (Compl't ¶ 20.)

The Developer Agreement provided that the Developer Agreement and the NDA "constitute the entire agreement between the parties," and that in the event of a conflict in the terms of the Developer Agreement and the NDA, the Developer Agreement "shall govern . . . ." (Dev. Agrm't § 9(f)(1).) The NDA and the Developer Agreement included different provisions as to the resolution of disputes arising under them: The NDA states that New York courts had exclusive jurisdiction over any dispute arising under it, whereas the Developer Agreement provides that any dispute arising under it is to be decided in an arbitration administered by the American Arbitration Association ("AAA"), unless "Bloomberg elects to have any Dispute heard and determined in state or federal courts." (Id. § 9(d)(iii).) The Developer Agreement also provides that "[n]o action" arising out of it may be brought by iSentium more than one year after the cause of action's accrual. (Id. § 9(a)(v).)

At an unspecified point in time, the iSENSE app became available through the Bloomberg Terminal. (Def. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11.) In or around February 2016, iSentium requested that Bloomberg remove iSENSE from Bloomberg Terminals. (Def. 56.1 ¶ 14; Pl. 56.1 Resp. ¶ 14.) As described in the Complaint, iSENSE and Bloomberg Terminals no longer had compatible technology, making the continued inclusion of iSENSE infeasible. (Compl't ¶ 26.) Bloomberg confirmed the NDA's termination. (Def. 56.1 ¶ 15; Pl. 56.1 Resp. ¶ 15.) According to iSentium, Bloomberg soon thereafter announced its own sentiment-analysis application. (Def. 56.1 ¶ 16.; Pl. 56.1 Resp. ¶ 16.) iSentium asserts that Bloomberg

misappropriated iSentium's trade secrets in order to launch its own, similar product. (Def. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17.) It is undisputed that sometime in July 2016, Bloomberg issued a press release announcing its own sentiment analysis application, which iSentium claims was designed using its misappropriated technology. (Def. 56.1 ¶¶ 17-18; Pl. 56.1 Resp. ¶¶ 17-18.)

In an Opinion and Order of October 29, 2018, the Court granted Bloomberg's motion to dismiss iSentium's claim of patent infringement pursuant to Rule 12(b)(6), Fed. R. Civ. P. See 343 F. Supp. 3d at 390-94. In a second Opinion and Order, the Court denied Bloomberg's motion to dismiss iSentium's claims for breach of contract, violation of the DTSA, and misappropriation of trade secrets under New York law, but granted Bloomberg's motion to dismiss claims of unjust enrichment and promissory estoppel as duplicative of the breach of contract claim. iSentium, LLC v. Bloomberg Fin. L.P., 2018 WL 6025864 (S.D.N.Y. Nov. 16, 2018).

The remaining claims are for breach of contract and misappropriation of trade secrets under New York law and the DTSA. Bloomberg now urges that iSentium brought its claims after the expiration of the one-year limitations period set forth at section 9(a)(v) of the Developer Agreement, and that its claims are therefore time-barred. According to Bloomberg, iSentium concluded that its trade secrets had been misappropriated by Bloomberg as early as July 2016, but waited until October 4, 2017 to bring this action. iSentium disputes that its claims arise out of the Developer Agreement, and urges that they solely arise from the NDA. The NDA does not specify a limitations period, and iSentium argues that the Developer Agreement's one-year limitations period does not apply.

SUMMARY JUDGMENT STANDARD.

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009). In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted).

"Where the language of a contract is clear, summary judgment is appropriate, and the fact that one party may have a different interpretation of the language does not make it any less plain. The proper interpretation of a contract is a question of law for the court. Extrinsic evidence is unnecessary where it is determined that the contractual language is unambiguous." Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co., 970 F.2d 1138, 1147-48 (2d Cir. 1992) (citations omitted).

DISCUSSION.

> I. iSentium's Claims Fall Within the Developer Agreement's One-Year Limitations Period.
>
>> A. Because the NDA and Developer Agreement Contain Conflicting Terms about the Resolution of Disputes Arising Under Them, the Developer Agreement Governs.

"In New York, agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to our strong public policy favoring freedom of contract." 159 MP Corp. v. Redbridge Bedford, LLC, 33 N.Y.3d 353, 356 (2019). "A reading of the contract should not render any portion meaningless. Further, a contract should be read as a whole, and every part will be interpreted with reference to the whole; and if possible it will be so interpreted as to give effect to its general purpose." Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324-25 (2007). "Courts will give effect to the contract's language and the parties must live with the consequences of their agreement. If they are dissatisfied, the time to say so is at the bargaining table." Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC, 22 N.Y.3d 413, 424 (2013) (quotation marks and alterations omitted).

"Parties to a contract may agree to limit the period of time within which an action must be commenced to a period shorter than that provided by the applicable statute of limitations. To be enforceable, such provision must be clear and unambiguous." Batales v.

Friedman, 144 A.D.3d 849, 850 (2d Dep't 2016) (quotation marks and citations omitted); accord John J. Kassner & Co. v. City of New York, 46 N.Y.2d 544, 550-51 (1979) ("The parties may cut back on the Statute of Limitations by agreeing that any suit must be commenced within a shorter period than is prescribed by law."). "Where the party against which an abbreviated Statute of Limitations is sought to be enforced does not demonstrate duress, fraud, or misrepresentation in regard to its agreement to the shortened period, it is assumed that the term was voluntarily agreed to." Village of Saltaire v. Zagata, 280 A.D.2d 547, 548 (2d Dep't 2001).

As noted, the NDA was executed on or about June 11, 2013, and the Developer Agreement was executed on or about May 1, 2014. (Def. 56.1 Exs. A, C.) The NDA anticipated that the parties might later enter into the Developer Agreement: it expressly provided that certain obligations concerning the use of confidential information could be modified in a future Developer Agreement. (NDA § C(4), C(7), G.) The Developer Agreement contained a provision stating that the Developer Agreement and the NDA "constitute the entire agreement between the parties," and that the Developer Agreement would govern in the event that any conflicts existed between the two contracts. (Dev. Agrm't § 9(f)(i).) The relevant section states in full:

> This Agreement, including any and all attached Exhibits, Addenda, and Appendices, which shall be deemed incorporated herein, together with any non-disclosure agreement regarding the App Portal entered into by the parties ("NDA") constitute the entire agreement between the parties, and supersedes any prior written or oral agreements, regarding the subject matter herefore. In the event of a conflict between this Agreement and either the NDA, the agreement for the BLOOMBERG PROFESSIONAL service, or any Other Bloomberg Service, or a schedule or addendum thereto, this Agreement shall govern unless otherwise expressly set forth therein with a reference to this Section 9(f).

(Id.)  Thus, under the express language of paragraph 9(f)(1), the parties agreed that the Developer Agreement, together with the NDA, "constitute the entire agreement between the parties," and that in the event of a conflict between the Developer Agreement and the NDA, the Developer Agreement "shall govern" unless the parties "expressly" agree otherwise.  (Id.)

The NDA and the Developer Agreement have conflicting provisions as to the resolution of any legal dispute arising under them.  As mentioned, the NDA includes a choice-of-law and forum-selection clause granting exclusive jurisdiction to New York courts:

> This NDA, its validity, construction and performance, shall be governed by, and construed in all respects under, the laws of the State of New York without regard to choice-of-law principles.  The parties agree to submit to the exclusive jurisdiction of the federal and state courts located in New York County, New York in connection with any matters arising out of this NDA and to waive any objection to the propriety or convenience of venue.

(NDA § G.)  By contrast, the Developer Agreement requires any dispute to be decided in arbitration, unless Bloomberg opts to proceed in the state or federal courts of New York.  The Developer Agreement states:

> Subject to the limitations of Section 9(d)(iii) below, any controversy or claim arising out of, relating to, or in connection with this Agreement (collectively, any "Dispute") shall be determined by arbitration administered by the [AAA] in accordance with its Commercial Arbitration Rules in effect at the time the arbitration is commenced.  The arbitration shall be governed by the arbitration law of the State of New York and the arbitration shall take place in New York, New York.

(Dev. Agrm't § 9(d).)  The Developer Agreement further provides that "[t]his arbitration provision shall not apply in the event that Bloomberg elects to have any Dispute heard and determined in state or federal courts. . . .  In the event that Developer [iSentium] initiates any action to resolve a dispute, it must submit such Dispute for determination by arbitration in accordance with this arbitration provision."  (Dev. Agrm't § 9(d)(iii).)  It further provides that

"[n]o action, regardless of form, arising out of or pertaining to this Agreement may be brought by Developer [iSentium] more than one year after the cause of action has accrued." (Dev. Agrm't § 9(a)(v).) It states that "[s]ection[] . . . 9 hereof shall survive any termination or expiration of this Agreement and shall continue in full force and effect." (Dev. Agrm't § 9(e).)

Section 9(f)(1) of the Developer Agreement expressly incorporates the NDA: the parties agreed that the two contracts together "constitute the entire agreement between the parties" and that the Developer Agreement "shall govern" in the event of a conflict. The Developer Agreement also established a dispute-resolution process that conflicts with the NDA: the NDA requires that "any matters arising out of this NDA" be resolved in New York courts and does not provide for a truncated limitations period, but the Developer Agreement requires iSentium to bring its claims through arbitration and provides that any "action, regardless of form" must be brought within one year of accrual. (NDA § G; Dev. Agrm't §§ 9(a)(v), 9(d), 9(d)(iii).) Applying section 9(f)(1), the Developer Agreement governs in the event of a conflict, and iSentium is bound by its agreement to a one-year limitations period for any "action, regardless of form, arising out of or pertaining to this Agreement . . . ." (Dev. Agrm't § 9(a)(v).)

The Court further concludes that, under the Developer Agreement, it has authority to decide whether iSentium's claim is timely under the one-year limitations provision, and that the issue need not be decided by an arbitrator. While the Developer Agreement provides that iSentium "must submit" a dispute arising under it to arbitration, it also states that the arbitration provision "shall not apply in the event that Bloomberg elects to have any Dispute heard and determined in state or federal courts." (Dev. Agrm't § 9(d)(iii).) The Development Agreement therefore give Bloomberg the option either to proceed with iSentium's claims in arbitration or, alternatively, to pursue adjudication of those claims in state or federal court. Bloomberg has

elected to proceed in federal court rather than to invoke the arbitration provision and compel arbitration of iSentium's claims. Separately, a party may also waive its right to enforce an arbitration clause through its litigation conduct, including instances where it "force[s] its adversary to respond to substantive motions" or delays invoking arbitration rights by filing substantive motions while an adversary incurs delay and expense. See, e.g., PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997). Bloomberg has now filed three dispositive motions in this case without invoking the arbitration provision, thereby waiving any right to do so under the Developer Agreement.

In opposition, iSentium argues that the NDA and the Developer Agreement should be construed as separate, stand-alone agreements. It urges that its claims arise solely out of the NDA, and that the Developer Agreement's one-year limitations period therefore does not apply to its claims.

"In general, 'when two parties have made two separate contracts it is more likely that promises made in one are not conditional on performances required by the other.'" Novick v. AXA Network, LLC, 642 F.3d 304, 312 (2d Cir. 2011) (quoting Rudman v. Cowles Communications, Inc., 30 N.Y.2d 1, 13 (1972)). At the same time, "[w]here several instruments constitute part of the same transaction, they must be interpreted together." BWA Corp. v. Alltrans Express U.S.A., 112 A.D.2d 850, 852 (1st Dep't 1985). "In determining whether contracts are separable or entire, 'the primary standard is the intent manifested, viewed in the surrounding circumstances.'" Davimos v. Halle, 60 A.D.3d 576, 577 (1st Dep't 2009) (quoting Williams v. Mobil Oil Corp., 83 A.D.2d 434, 439 (2d Dep't 1981)).

In this case, the parties communicated their intent in the express language of the Developer Agreement, where they agreed that the two contracts together "constitute the entire

agreement between the parties" and that the Developer Agreement "shall govern" in the event of a conflict. (Dev. Agrm't § 9(f)(1).) A court "'is to apply the meaning intended by the parties, as derived from the language of the contract in question.'" Dreisinger v. Teglasi, 130 A.D.3d 524, 527 (1st Dep't 2015) (quoting Duane Reade, Inc. v. Cardtronics, LP, 54 A.D.3d 137, 140 (1st Dep't 2008)).

Further, the NDA and the Developer Agreement both govern the single transaction of the iSENSE app's incorporation into the Bloomberg Terminal platform. Each agreement sets forth rights and obligations with respect to confidential and proprietary information, including parallel provisions that prohibit Bloomberg from attempting to "reverse engineer, decompile or disassemble the Developer Apps for any improper purpose." (Dev. Agrm't § 7(a)(ii); see also NDA § C(6) (the parties "shall not, and shall not assist, others to, disassemble, decompile, or reverse engineer the Disclosing Party's Confidential Information . . . .").) The parties' promises concerning the use of confidential information are intertwined in the two agreements, and both agreements must be considered in order to adjudicate any claimed misappropriation. The provision that the Developer Agreement governs in the event of a conflict reflects the parties' intent to harmonize the two agreements.

The Court therefore concludes that iSentium's claims are governed by the Developer Agreement's provision that "[n]o action, regardless of form, arising out of or pertaining to this Agreement may be brought by Developer [iSentium] more than one year after the cause of action has accrued." (Dev. Agrm't § 9(a)(v).)

B. iSentium Has Not Pointed Out Ambiguity in the Agreements.

In opposition, iSentium urges that there is ambiguity as to whether the two agreements should be construed as a single contract. (See Opp. Mem. at 10 n.2 ("there can be no

question that the documents reflect ambiguity as to whether they were intended to be read as a single contract.").) However, it has not pointed to ambiguity in the language of either agreement. "'[A] contract is not rendered ambiguous just because one of the parties attaches a different, subjective meaning to one of its terms.'" Bank of New York Mellon v. WMC Mortgage, LLC, 136 A.D.3d 1, 9 (1st Dep't 2015) (quoting Bajraktari Mgt. Corp. v. American Int'l Grp., Inc., 81 A.D.3d 432, 432 (1st Dep't 2011)); accord Rosenthal v. Quadriga Art, Inc., 69 A.D.3d 504, 506 (1st Dep't 2010) ("[T]he existence of a disagreement about the 'plain meaning' of the words does not necessarily render those words ambiguous for purposes of construing the contract.").

In an attempt to demonstrate ambiguity, iSentium points to the declaration of its CEO, Gauthum Sastri. (Docket # 54.) Sastri states that he understood the NDA and the Developer Agreement to be separate agreements; that "[i]t was clearly my understanding" that the Developer Agreement did not modify the NDA; and that "[t]here is no way that iSentium would have agreed essentially to eliminate all its intellectual property protections provided under the NDA with the execution of the Developer Agreement." (Sastri Dec. ¶¶ 5-7.)

But elsewhere, iSentium urges that the Developer Agreement "is clear and unambiguous" that its dispute-resolution provision does not apply to the NDA. (Opp. Mem. at 1.) iSentium also made past representations to the Court that it views the contracts as unambiguous, which the Court noted in its Order setting the schedule for this motion. (Docket # 47 ("Both sides agree that the contracts at issue are not vague or ambiguous in any respect material to either side's motion.").)

Because iSentium does not point to ambiguity in the language of the NDA or the Developer Agreement, and the Court does not discern any, the Sastri Declaration does not defeat

Bloomberg's motion for summary judgment. See, e.g., Jet Acceptance Corp. v. Quest Mexicana S.A., 87 A.D.3d 850, 854 (1st Dep't 2011) ("Extrinsic evidence may not be introduced to create ambiguity in an otherwise clear document."); W.W.W. Associates, Inc. v. Giancontieri, 77 N.Y.2d 157, 163 (1990) ("It is well settled that extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face."). Similarly, because iSentium has not identified a contractual ambiguity, the interpretive canon of contra proferentem does not apply. See generally Matter of Riconda, 90 N.Y.2d 733, 740 (1997); Schering Corp. v. Home Ins. Co., 712 F.2d 4, 10 n.2 (2d Cir. 1983) (New York courts apply canon of contra preferentem only "as a matter of last resort, after all aids to construction have been employed but have failed to resolve the ambiguities in the written instrument.").

iSentium's assertion of ambiguity in the agreements does not defeat Bloomberg's summary judgment motion.

### C. iSentium Has Not Described Litigation Conduct by Bloomberg that Defeats the Summary Judgment Motion.

Finally, iSentium urges that Bloomberg's own conduct in this litigation reflects the parties' intent that the Developer Agreement's one-year limitations period not apply to the claims at issue. iSentium notes that Bloomberg invoked the one-year limitations period only after bringing its successful motion to dismiss the patent-infringement claim, and has not sought to enforce the arbitration provision of section 9(d)(iii) of the Developer Agreement. (Opp. Mem. 15-17.) iSentium urges that this conduct reflects an understanding by Bloomberg that the one-year limitations period does not apply to this case.

However, as Bloomberg notes, the patent-infringement claim was not premised on enforcement of the NDA or the Developer Agreement, and did not turn on misuse of confidential

information. (Reply at 8-9.) As discussed, the Developer Agreement permits Bloomberg to elect whether claims against it will proceed in arbitration or in state or federal court. (Dev. Agrm't § 9(d)(iii).) iSentium's arguments related to the sequence of motion practice do not defeat Bloomberg's motion for summary judgment.

> II. Bloomberg Has Come Forward With Evidence that the Action Was Not Timely Commenced, and in Opposition, iSentium Does Not Point to <u>Evidence of Any Claim's Accrual.</u>

iSentium commenced this action on October 4, 2017. (Docket # 1.) In order for its claims to be timely pursuant to the agreement of the parties, those claims must have accrued within one year of October 4, 2017.

As described in the Complaint, iSentium's technology became incompatible with the Bloomberg Terminal in or around February 2016, at which point, iSentium asked Bloomberg to remove iSENSE from its terminals and requested termination of the NDA. (Compl't ¶¶ 26-28.) The Complaint alleges that, although Bloomberg confirmed the NDA's termination, it continued to offer iSENSE on its terminals. (Compl't ¶¶ 28, 30, 32.) Without specifying a date, the Complaint alleges that "[s]oon after" iSentium stopped supporting usage of iSENSE on Bloomberg Terminals (that is, February 2016) Bloomberg announced its own sentiment-analysis application. (Compl't ¶ 33.)

It is undisputed that in July 2016, Bloomberg issued a press release that described its own sentiment-analysis application. (Def. 56.1 ¶ 18; Pl. 56.1 Resp. ¶ 18.) Neither party has submitted a copy of that press release. In a letter to the Court of December 14, 2018, iSentium stated that "Bloomberg announced the launch of its own sentiment analysis product in or around July 2016 that looked and was described by Bloomberg exactly like iSENSE. Because iSentium was well aware of the competence of Bloomberg's scientists and developers over the course of

their business relationship, iSentium reasonably concluded that Bloomberg's new sentiment analysis product could not have been developed without significant cribbing of iSentium's proprietary data." (Def. 56.1 Ex. D. at 4.) iSentium proceeded to states that it had "no idea" when Bloomberg's misappropriation first began, but that it may have been as early as 2013. (Id.) The letter later stated that "iSentium could not reasonably have concluded . . . that Bloomberg was misappropriating its data . . . until Bloomberg's press release of July 2016." (Id. at 6.)[1]

The Complaint alleges that Bloomberg announced its own competing sentiment-analysis app "soon after" February 2016 (Compl't ¶ 33), and iSentium's pre-motion letter described the July 2016 Bloomberg press release as describing a product "exactly like iSENSE." (Def. 56.1 Ex. D at 4.) iSentium's Local Rule 56.1 counterstatement disputes that its letter claims actual knowledge of a breach or misappropriation, and argues that the fact that it could reasonably have identified breach or misappropriation in July 2016 "does not mean that in July 2016 it had, in fact, actual or 'first-hand knowledge' of trade secret misappropriation." (Pl. 56.1 Resp. ¶ 18.) However, neither the breach of contract claim nor the misappropriation claims look to actual knowledge of the breach or misappropriation to determine the time of accrual.

As recently explained by the New York Court of Appeals, a breach of contract claim begins to accrue at the date of breach:

> In New York, the default accrual rule for breach of contract causes of action is that the cause of action accrues when the contract is breached. Except in cases of fraud where the statute expressly provides otherwise, the statutory period of limitations begins to run from the time when liability for wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury. This Court has repeatedly rejected accrual dates which cannot be ascertained with any degree of certainty, in favor of a bright line

---

[1] The relevant passage reads in full: "As explained above, this [Bloomberg] product [of 2014] was not the same as iSENSE and iSentium could not reasonably have concluded from this that Bloomberg was misappropriating its data. That did not occur until Bloomberg's press release in July 2016." (Id. at 6.)

> approach, and for that reason, we do not apply the discovery rule to statutes of limitations in contract actions.

Deutsche Bank Nat'l Tr. Co. Tr. for Harborview Mortg. Loan Tr. v. Flagstar Capital Markets Corp., 32 N.Y.3d 139, 145-46 (2018) (citations, quotation marks and alteration omitted).

Under New York law, a claim for misappropriation of trade secrets "'accrues either when defendant discloses the trade secret or when he first makes use of plaintiff's ideas.'" Inspired Capital, LLC v. Conde Nast, 2019 WL 2191249, at *5 (S.D.N.Y. May 21, 2019) (Keenan, J.) (quoting Galet v. Carolace Embroidery Prod. Co., 1994 WL 542275, at *4 (S.D.N.Y. Oct. 5, 1994) (Sotomayor, U.S.D.J.)). "The date of accrual may be extended under the continuing tort doctrine where the 'defendant has kept a secret confidential but continued to use it for commercial advantage.' Where, however, the defendant discloses the secrets revealed to him, there can be no continuing tort of unlawful use." Synergetics USA, Inc. v. Alcon Labs., Inc., 2009 WL 2016872, at *2 (S.D.N.Y. July 9, 2009) (Cote, J.) (quoting Andrew Greenberg, Inc. v. Svane, Inc., 36 A.D.3d 1094, 1098 (3d Dep't 2007)).

Under the DTSA, a claim begins to accrue when the act of misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d). "Thus, the statute of limitations began to run when Plaintiff knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used." Uni-Sys., LLC v. United States Tennis Ass'n, Inc., 350 F. Supp. 3d 143, 178 (E.D.N.Y. 2018).[2]

---

[2] iSentium has not urged that its DTSA claim does not arise under the NDA or the Developer Agreement, or that the parties may not contract around the DTSA's three-year limitations period, 18 U.S.C. § 1836(d). The Court is unaware of any authority that preclude the parties from agreeing to an abbreviated limitations period for a DTSA claim. See generally Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 106-07 (2013) (parties may agree to a reasonable limitations period shorter than that set forth by federal statute, unless the statute does not permit the parties to do so).

Bloomberg has come forward with evidence that iSentium's cause of action accrued, at the latest, in July 2016. While iSentium disputes that it had actual knowledge of the breach or misappropriation, its Rule 56.1 Statement acknowledges that it reasonably could have known of the breach and/or misappropriation in July 2016. (Pl. 56.1 Resp. ¶ 18 ("iSentium stating that it 'could not reasonably have' come to certain conclusions until July 2016 does not mean that in July 2016 it had, in fact, actual or 'first-hand knowledge' of trade secret misappropriation.").) In opposition, iSentium has not come forward with any evidence that it in fact learned of a breach or misappropriation at a later time, nor does it urge that discovery is required to shed light on when its claims accrued. Aside from disputing paragraph 18 of Bloomberg's Local Civil Rule 56.1 statement, iSentium's submissions do not address the time of accrual.

Bloomberg has come forward with evidence that would permit a reasonable trier of fact to conclude that iSentium's claims accrued sometime in July 2016. In opposition, iSentium has not pointed to countervailing evidence that would permit a reasonable trier of fact to conclude that its claims are timely, and it does not seek discovery as to the date of accrual.

Bloomberg's summary judgment motion will therefore be granted.

CONCLUSION.

Bloomberg's motion for summary judgment is GRANTED. (Docket # 49.) The Clerk is directed to terminate the motion and to enter judgment for the defendants.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       January 16, 2020